J-S04044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TENTH PRESBYTERIAN CHURCH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP SNYDER | : | |
| | : | |
| Appellant | : | No. 1321 EDA 2023 |

Appeal from the Order Entered April 18, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190703016

BEFORE:  BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.:                                     **FILED MAY 31, 2024**

Philip Snyder ("Snyder") appeals from the order granting the emergency motion for injunctive relief for a preliminary injunction filed by Tenth Presbyterian Church ("the Church").  We affirm in part, vacate in part, and remand for further proceedings.

This matter has been before this Court in three prior appeals.  In one of those appeals, this Court summarized the factual and procedural history of this dispute as follows:

> The Church owns several properties in Philadelphia.  The Church's primary facility is located at 1701 Delancey Street ("the Property").  Snyder moved to Philadelphia in 2008, after which he joined the Church, where he remained a member until the Church excommunicated [him] in August 2016.  Snyder thereafter began picketing at the Property regarding his excommunication and the conduct of certain current and prior Church officials.  Snyder brought a defamation action against individual members of the Church, but ultimately, a jury tendered a verdict against Snyder.

After the verdict in the defamation action, Snyder protested outside of the Property every Sunday, before and after Church services. [In] 2019, the Church filed a complaint for an injunction and an emergency motion for injunctive relief for a preliminary injunction. The Church sought to restrict Snyder from coming within 1,000 feet of all properties owned by the Church. Following oral argument, Snyder temporarily agreed to the Church's requested relief.

The trial court subsequently conducted a hearing on the Church's motion for a preliminary injunction [i]n . . . 2020. The trial court described the evidence presented at that hearing as follows:

Snyder testified that he began picketing outside of the Property after the . . . 2019. . . jury verdict more frequently, with a sign that contained the phrase "naked beatings," "lying," and "rape," because he was displeased with the results of the case. Snyder further testified that he had protested while wearing a body camera and filmed congregants outside of the Property. Snyder testified that a trial court order and subsequent opinion in the defamation case misrepresented the truth. Douglas Baker (Baker), the Church's former administrator, testified that Snyder frequently wore a visibly "concealed" firearm to church services when he was a member, and that he continued the practice while picketing with the sign and body camera. Baker testified that Snyder would verbally harass and yell at congregants outside the Property and then post body camera videos on a blog. Dr. William Goligher (Dr. Goligher), senior minister for the Church, testified that Snyder called him the "son of Satan" and a liar. Dr. Goligher testified that Snyder had verbally disparaged Snyder's own family for not committing to his protest and not being faithful, including referring to Snyder's wife as Job's wife . . . Dr. Goligher also testified that Snyder seemed preoccupied with safety and firearms, such that he would stand beside Dr. Goligher and point out individuals whom he thought were carrying firearms. Snyder's fixation on security and policing, even minor behaviors of the Church congregants, went on for years and included concerns about stolen phones,

money, and immigrants. Snyder himself provided testimony that he has been the only individual telling the truth, that he has mailed 100 pages of material to 200 members of the Church, that he will never stop any of his behaviors until the Church's leadership has resigned in full, and that the Church was trying to poison him and hire a hitman to assassinate him. Susan Elzey (Ms. Elzey), a congregant, testified that outside of Church services [in] 2019, Snyder told her he was an instrument of God, similar to a prophet, and that only Snyder knows the true nature of Dr. Goligher's soul. Snyder went on to tell Ms. Elzey that Dr. Goligher was a son of Satan, and that any congregants who support Dr. Goligher are doing Satan's work. Snyder also told Ms. Elzey that he was unhappy with his wife, described her as Job's wife because she did not support him, and that his oath to remove Dr. Goligher from the Church was more important to him than his family.

By order dated February 10, 2020, the trial court granted the Church's motion and enjoined Snyder from appearing within five thousand (5,000) feet of the Church's properties located at (1) 1701 Delancey Street; (2) 1700 Spruce Street; (3) 315 S. 17th Street; (4) 1710 Spruce Street; and (5) 1716 Spruce Street.

Trial Court Opinion, 8/21/20, at 1-5 . . ..

*Tenth Presbyterian Church v. Snyder*, 266 A.3d 640 (Pa. Super. 2021) (unpublished memorandum at **1-5) (emphasis, brackets, unnecessary capitalization, and some quotation marks omitted).

In an appeal of the February 2020 order granting the Church's motion, this Court affirmed the trial court's determination that a preliminary injunction was warranted; however, based on the Church's request for a 1,000 feet restriction, this Court reversed the imposition of a 5,000-foot restriction

- 3 -

against Snyder, and remanded for the trial court to fashion a distance limitation that was sufficient to protect congregants' access to the Church and its services, yet continued to uphold Snyder's constitutional right to convey his dissatisfaction with the Church and its leadership. *See id*. (unpublished memorandum at **24-25). This Court directed the trial court to narrowly tailor the injunction to "address the physical realities of each Church property . . .." *Id*. (unpublished memorandum at *22 n.3). Upon remand, the trial court entered an order granting the Church's motion and enjoining Snyder from appearing within 1,000 feet of all Church-owned properties; however, it did not address the physical realities of each Church property.

The matter returned to this Court on an appeal from that order. This Court noted that the order did not indicate that the trial court had weighed the physical characteristics of each Church property and tailed the distance limitation accordingly. As such, this Court affirmed all aspects of the order except for the 1,000 feet distance limitation, which was vacated. This Court acknowledged the trial court's finding that Snyder engaged in aggressive and agitated behavior that frightened Church members inside and outside of the Property, but directed the trial court to explain upon remand why its distance restriction of 1,000 feet was the least necessary distance to protect Church property, permit the congregants and Church employees access to the Church and to hold services without distraction, with the least possible impingement on Snyder's constitutional right to convey his dissatisfaction with the Church

and its leadership on public streets and sidewalks. *See Tenth Presbyterian Church v. Snyder*, 285 A.3d 917 (Pa. Super. 2022) (unpublished memorandum at *12). On remand, the trial court entered an order in granting the Church's motion and enjoining Snyder from appearing within 500 feet of all Church-owned properties.

On appeal of that order, this Court determined that the trial court's explanation for imposing its new distance requirement failed to answer our remand directive:

> On remand, the trial court, in setting its new distance requirement at 500 feet, *did not cite any record evidence or receive any new evidence*. Instead, the trial court cited its own internet research that a "typical" city block is 310 to 323 feet in length, seemingly concluding that keeping Snyder around a block-and-a-half away from the Church was the only way to ensure that his protest does not deter congregants and employees of the Church from accessing its properties.

> The problem with this conclusion, however, is that *it is not clear what evidence the trial court is relying on for its finding that 500 feet is appropriate under the facts of this case, taking into consideration the physical layout of the Church's properties and the surrounding neighborhood*. Like it failed to do before, *there is no evidence that the trial court, in setting its distance requirement, weighed the physical characteristics of the Church's property and then tailored its distance requirement* so that Snyder could still meaningfully protest the Church and its leadership.

*Tenth Presbyterian Church v. Snyder*, 296 A.3d 569 (Pa. Super. 2023) (unpublished memorandum at **16-17) (some emphasis added, some emphasis in original). This Court additionally determined that the language in the trial court's order which enjoined Snyder from "[a]ppearing within [500 feet] of all property owned and/or occupied by [the Church], *in the*

- 5 -

*immediate vicinity* of [the Church] *including*: 1700 Spruce Street, 1701 Delancey Street, 315 S. 17th Street, 1710 Spruce Street, and 1716 Spruce Street, Philadelphia, PA 19103," did not restrict the Church's property to only those properties listed. *Id*. (unpublished memorandum at **18-19) (emphasis in original). Consequently, this Court determined that the order, as written, "possibly still captures unidentified locations from which Snyder is enjoined from appearing within 500 feet." *Id*. (unpublished memorandum at *19). On these bases, this Court vacated the trial court's order and remanded for the trial court to: (1) identify all properties from which Snyder is enjoined from appearing; (2) identify the specific conduct of Snyder which is causing the harm and why that particular distance requirement is necessary to alleviate the harm; and (3) set forth expressly why its 500-foot distance requirement was the least necessary to protect the ability of congregants and employees to access the Church and hold services without distraction, while also being the least possible infringement on Snyder's constitutional right to protest the Church and its leadership in public. *See id*. (unpublished memorandum at **19-20).

Upon remand, the trial court entered an order on April 18, 2023, in which it indicated that Snyder is enjoined from "[a]ppearing within 350 feet of the following properties: a. 1700 Spruce Street, Philadelphia, PA 19103; b. 1701 Delancey Street, Philadelphia, PA 19103; c. 315 S. 17th Street, Philadelphia, PA 19103; d. 1710 Spruce Street, Philadelphia, PA 19103; and

e. 1716 Spruce Street, Philadelphia, PA 19103." ***See*** Order, 4/18/23, at unnumbered 1. The order further explained that "all of the properties subject to this injunction are actively used by Church congregants or employees and are located in close proximity to the area where . . . Snyder has engaged in his disruptive and harassing conduct." ***Id***. at unnumbered 5. The order also identified, in detail, the particular conduct of Snyder that is causing the harm, including verbally harassing and aggressively approaching congregants as they are attempting to attend Church services or enter Church buildings, causing congregants to fear for their safety to the point where they do not feel safe to attend Church services, making threats to the life of a Church minister, displaying escalating anger and increased confrontations with congregants following the loss of his defamation action against Church members, displaying a temperament change and an increased hostile social media presence including a blog, possessing a firearm on at least one occasion while engaging in his aggressive and harassing conduct, and displaying behaviors indicative of escalating violence relating to religious institutions. ***Id***. at unnumbered 2-4.

However, rather than providing an explanation as to why the 500 feet distance requirement is the least necessary distance to alleviate the harm, the trial court, once again, simply reduced the distance limitation (this time to 350 feet) and merely noted that the primary Church building is more than 100 years old, the security infrastructure requires updating, and congregants

- 7 -

inside the Church could hear Snyder protesting twenty feet away from the entrance. *See id*. at unnumbered 2-3. Snyder filed a timely notice of appeal from the order, and both he and the trial court complied with Pa.R.A.P. 1925.[1]

Snyder raises the following issue for our review: "Did the [trial] court commit an error of law and/or abuse its discretion by failing to narrowly tailor its injunction to address the alleged harms claimed by . . . [the] Church . . .?" Snyder's Brief at 4 (unnecessary capitalization omitted).

An appellate court's review a trial court order granting or refusing to grant a preliminary injunction is for an abuse of discretion. *See Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). In conducting such review, this Court employs a "highly deferential" standard. *Warehime v. Warehime*, 860 A.2d 41, 46 (Pa. 2004). This "highly deferential" standard of review contemplates that, when reviewing the grant or denial of preliminary injunctive relief, an appellate court will "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id*.

There are six essential prerequisites that a party must establish prior to obtaining preliminary injunctive relief: Specifically, the party must show: (1) the injunction is necessary to prevent immediate and irreparable harm that

---

[1] In lieu of authoring a Rule 1925(a) opinion, the trial court directed this Court to its April 18, 2023 order and its three prior Rule 1925(a) opinions prepared in this matter. *See* Trial Court Opinion, 9/5/23, at 1.

cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; (5) the injunction it seeks is reasonably suited to abate the offending activity; and (6) a preliminary injunction will not adversely affect the public interest. *See Warehime*, 860 A.2d at 46-47. The burden of proving these six essential prerequisites falls on the party who requested preliminary injunctive relief. *Id*.[2]

Where, as here, an order affects First Amendment rights, the order "must be tailored as precisely as possible to the exact needs of the case." *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175

---

[2] This Court previously affirmed the trial court's determination that that the Church satisfied its burden of proving these six essential prerequisites and is entitled to injunctive relief. *See Tenth Presbyterian Church v. Snyder*, 266 A.3d 640 (unpublished memorandum at **21, 24) (concluding that "the trial court had 'apparently reasonable grounds' for the imposition of a preliminary injunction against Snyder," and affirming the trial court's determination that a preliminary injunction is warranted); *see also Tenth Presbyterian Church v. Snyder*, 285 A.3d 917 (unpublished memorandum at **5, 12-13) (noting this Court's prior affirmance of the propriety of the preliminary injunction, and affirming all aspects of the preliminary injunction order except for the distance limitation). Thus, we need not reconsider these prerequisites.

(1968). Therefore, "[a]n order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." ***Turner Constr. v. Plumbers Local 690***, 130 A.3d 47, 69 (Pa. Super. 2015).

Snyder contends that, while the trial court reduced the distance limitation to 350 feet, it has not shown how it considered the physical characteristics of the Property in determining this distance. Instead, Snyder asserts, the trial court merely noted that the Church is over 100 years old, its security requires updating, and congregants inside the Church could hear Snyder protesting twenty feet away from the entrance. Snyder maintains that the trial court did not consider—and conducted no analysis—as to whether there is a distance between twenty feet and 350 feet at which Snyder's protests would no longer be heard from inside the Church.

Snyder additionally argues that the trial court did not narrowly tailor the distance requirement to balance the congregants' ability to access the Property with his right to free speech. Snyder insists that the order not only permanently enjoins him from picketing and distributing leaflets within 350 feet of the Church, but also bars him from appearing within 350 feet of the Property. Snyder claims that because he is functionally barred from physically existing near the Property, he is therefore banned from engaging in all

expressive conduct within this geographic boundary regardless of whether that expression deals with the Church.[3]

Notably, as indicated above, this Court has repeatedly affirmed the trial court's decision to grant preliminary injunctive relief to the Church. Indeed, on the lengthy record before this Court, there is no question that injunctive relief is appropriate and warranted, given Snyder's escalating and troubling pattern of aggression, intimidation, and threats to congregants and Church employees as they come and go from services, such that many congregants fear for their safety and many no longer attend Church services.[4]

Nevertheless, the trial court has yet to provide this Court with an explanation as to why its particular distance requirement is the least necessary to protect the ability of congregants and employees to access the Church and hold services without distraction, while also being the least possible

---

[3] Snyder additionally argues that the distance limitation prevents him from patronizing certain businesses near the Church, the injunction is overly broad in scope because it applies seven days per week and twenty-four hours per day, and that the second and fifth prerequisites for a preliminary injunction have not been satisfied. However, as this Court has repeatedly upheld the Church's entitlement to a preliminary injunction against Snyder, we need not address these arguments. *See Tenth Presbyterian Church v. Snyder*, 296 A.3d 569 (unpublished memorandum at *19 n.2) (rejecting Snyder's attempt to raise new issues and noting that, "as we have already affirmed those parts of the trial court's order, we will not revisit them here where the sole issue is the distance requirement"). Moreover, Snyder concedes that the only issue in this appeal is the distance limitation. *See* Snyder's Brief at 24.

[4] Dr. Goligher estimated that, due to the escalation in Snyder's conduct, the Church has lost 300 members. *See* N.T., 2/10/20, at 120.

infringement on Snyder's constitutional right to protest the Church and its leadership in public. *See Tenth Presbyterian Church v. Snyder*, 296 A.3d 569 (unpublished memorandum at **19-20). This Court previously directed the trial court to provide an explanation which takes into consideration the particular facts of this case, including the physical layout of the Church's properties and the surrounding neighborhood, as well as the physical characteristics of Church's property. *Id*. (unpublished memorandum at **16-17). Thus, as no such explanation has yet been provided, we are constrained to, once again, affirm all aspects of the order except for the distance limitation, which we vacate and remand for further proceedings.

While we acknowledge the trial court's anticipated frustration with yet another remand, this Court must nevertheless ensure that the certified record includes evidence which demonstrates that the distance limitation imposed by the trial court is narrowly tailored to the particular characteristics of the Church properties and the practical considerations attendant to the need to ensure safe and peaceful access by congregants and employees to those properties.[5] Such characteristics and considerations may include, but are not limited to, whether the Church has any on-site parking in which congregants

---

[5] We observe that, although the trial court elected to reduce the distance limitation following each prior remand, those reductions might not have been necessary if the trial court had directed this Court to record evidence demonstrating that the distance limitation was narrowly tailored to the particular facts of this case.

and employees may park for work, meetings, services, events, functions, *etc.*, and if so, whether such on-site parking is sufficient to accommodate employees and congregants. On the other hand, if there is no on-site parking or such parking is insufficient to accommodate employees and congregants, the trial court should consider how far a distance from Church properties do employees and congregants generally need to park in order to attend work, meetings, services, events, and functions at Church properties. The distance from which Church employees and congregants must travel to and from their vehicles (or places of public transportation) when accessing Church properties is highly relevant to a determination as to whether the trial court's distance requirement is the least necessary to protect the ability of congregants and employees to safely and peacefully access those properties without harassment and confrontation, while also being the least possible infringement on Snyder's constitutional right to protest the Church and its leadership in public.[6]

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this Memorandum. Superior Court jurisdiction relinquished.

_____

[6] Our review of the certified record discloses no evidence or testimony regarding the distance that congregants and employees must travel from their vehicles or places of public transportation to Church properties so as to calculate the distance during which they are potentially exposed to Snyder's harassment and confrontation. Hence, upon remand, an evidentiary hearing to determine such distances may be necessary.

- 13 -

Judge Stabile joins in the memorandum.

Judge Bowes filed a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/31/2024